IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


| | | |
|---|---|---|
| LAWRENCE WRIGHT, | ) | |
| | ) | |
| Movant/Defendant, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 05-640-GMS |
| | ) | Cr. A. No. 01-63-GMS |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent/Plaintiff. | ) | |


**MEMORANDUM OPINION**

---

Lawrence W. Wright. *Pro se* movant.

Edmond Falgowski,[1] Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware.  Attorney for respondent.

---

~Feb~ 4 , 2009
Wilmington, Delaware

---

[1]Edmond Falgowski, Esquire, has been substituted for Richard Andrews, Esquire, the Assistant United States Attorney formerly assigned to this case.

SLEET, Chief Judge

## I.    INTRODUCTION

Movant Lawrence Wright ("Wright") filed a *pro se* motion to vacate, set aside, or correct

sentence pursuant to 28 U.S.C. § 2255, asserting a total of three claims for relief.  (D.I. 131.)

The Government filed its answer in opposition.  (D.I. 136.)  In a Memorandum Opinion dated

September 17, 2008 (D.I. 138.), the court denied claims one and two as meritless.  However, the

court withheld a final decision with respect to Wright's ineffective assistance of counsel claim

(claim three) until the record could be supplemented with an affidavit provided by Wright's

former defense attorneys.  Having reviewed said affidavit, the court will deny claim three as

meritless.

## II.    BACKGROUND

A nineteen count indictment charged Wright with charges of conspiracy, interstate

transportation of stolen property, money laundering, bribery, and making false statements to

government officials.[2]  The charges alleged that Wright, the Reverend at the New Mount Olive

Baptist Church, and the now-deceased State Representative Al O. Plant, conspired to steal money

from the Suburban Street funds in a scheme where Representative Plant allocated approximately

---

[2]Count I alleged that Wright conspired to commit interstate transportation of stolen property (a violation of 18 U.S.C. § 2314) in violation of 18 U.S.C. § 371.  Counts II through IV charged Wright with the interstate transportation of stolen property in violation of 18 U.S.C. §§ 2314 and 2.  Counts V through VIII alleged that Wright laundered monetary instruments in violation of 18 U.S.C. §§ 1956(a)(1)(b)(i) and 2.  Counts IX through XVII charged Wright with bribery concerning programs receiving federal funds in violation of 18 U.S.C. §§ 666(a)(2) and 2.  Counts XVIII and XIX charged Wright with knowingly and willfully making a false statement in connection with a matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, in violation of 18 U.S.C. § 1001.  *United States v. Wright*, 194 F. Supp. 2d 287, 288 (D. Del. 2002).

1

$150,000 of Suburban Street Funds to Wright's church. Wright then drew the money from the church account, and deposited half of the funds into his personal account and the other half of the funds in the personal account of Representative Plant. (D.I. 90.)

A federal jury found Wright guilty on all nineteen counts. Wright filed a post-trial motion for judgment of acquittal with respect to the counts of the indictment that involved the transportation of stolen goods in interstate commerce. The Honorable Roderick M. Mckelvie granted the motion with respect to the nine bribery counts, but refused to dismiss the other counts. (D.I. 90; D.I. 91.) After Judge Mckelvie's retirement from the bench, the case was re-assigned to this court. During the sentencing hearing, the court considered, and rejected, Wright's request for a downward departure based on his charitable work. The court then sentenced Wright to 51 months of imprisonment on all counts, to be served concurrently, followed by 3 years of supervised release for each count, a $1,000 special assessment, and $150,000 restitution to New Mount Olive Baptist Church. (D.I. 106; D.I. 113.)

Wright appealed, and the Third Circuit Court of Appeals affirmed his convictions and sentences. *United States v. Wright*, 363 F.3d 237 (3d Cir. 2004). Thereafter, Wright filed a petition for a writ of certiorari in the United States Supreme Court. The Supreme Court denied Wright's motion for leave to proceed in forma pauperis on October 4, 2004, and denied his request for reconsideration on November 8, 2004. *See United States v. Wright*, 125 S.Ct. 243 (2004); *Wright v. United States*, 543 U.S. 978 (2004).

Wright filed the instant § 2255 motion to vacate, set aside, or correct his sentence. (D.I. 131.) The Government filed an answer arguing that all the claims in the motion should be dismissed as meritless, but also suggested that the court conduct an evidentiary hearing on

Wright's ineffective assistance of counsel claim. (D.I. 136.) On September 17, 2008, the court

denied claims one and two as meritless. As for claim three, the court concluded that an

evidentiary hearing was not necessary, but directed Wright's former defense attorneys to file an

affidavit responding to Wright's allegations of ineffective assistance. The Government filed

counsels' joint affidavit on October 10, 2008. (D.I. 139.)  Claim three is now ready for review.

## III.   DISCUSSION

In claim three,[3] Wright contends that his defense attorneys were constitutionally

ineffective for failing to pursue a plea bargain on his behalf when the evidence against him was

"patently overwhelming." Wright also contends that his attorneys provided ineffective assistance

because they "failed to inform him that, according to the language in 18 U.S.C. §§ 2(b), 2314," a

jury could convict him on the interstate transportation of stolen property charges even though he

did not know that the checks would be transported across state lines. (D.I. 132, at p. 7.)

According to Wright, "had [he] known the law in relation to the facts, . . . he would have pled

guilty instead of going to trial." *Id.*

"The plea bargain stage [is] a critical stage at which the right to effective assistance of

counsel attaches." *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992). To prevail on his claim

alleging ineffective assistance of counsel with respect to the plea process, Wright must satisfy

the two-part test articulated by the United States Supreme Court in *Strickland v. Washington*, 466

U.S. 668, 687-88 (1984). Under *Strickland*'s first prong, Wright must demonstrate that counsel's

performance fell below an objective standard of reasonableness, with reasonableness being

---

[3]Referred to as "Issue II" in Wright's memorandum in support of his §2255 motion. *See*
(D.I. 132, at p. 7.)

judged under professional norms prevailing at the time counsel rendered assistance. *Id.* at 688.

Under the second prong of the *Strickland* test, Wright must demonstrate a reasonable probability

that he would have pled differently but for counsels' deficient performance. *Strickland,* 466 U.S.

at 692-93. Thus, in order to prevail on claim three, Wright must demonstrate that counsel

provided insufficient or incorrect advice regarding the plea offer, which, in turn, undermined his

ability to make a reasonably informed decision to accept or deny the plea. *United States v. Day,*

969 F.2d 39, 43 (3d Cir. 1992).

In their joint affidavit, Wright's former attorneys explicitly refer to the March 27, 2002

plea offer and describe their discussions with Wright about said plea offer as follows:

> [We] specifically recall that the plea offer of March 27, 2002 was discussed with
> Reverend Wright at length. The money laundering count was a count which involved
> depositing a check by Lawrence W. Wright to his Wilmington account at Sun National
> Bank at 14th & Market Streets, which was a short distance from his church. Nevertheless,
> the offer in the letter of March 27, 2002 was discussed with the Reverend Wright and his
> wife, Linda, and they were fully informed of all possibilities. Questions were raised that
> required research and we rescheduled the meeting to research and get additional answers.
> We assured him we could not assure him that we could succeed on briefing at the close of
> the government's case or that a jury would necessarily believe his testimony as to his lack
> of any intent to defraud or any other wrong doing on his part, that he full intended, at all
> times, to utilize the money for purposes indicated, but he had no intent to divert the funds
> from the purposes for which they were intended.

(D.I. 139, at pp. 4-5.) The Government also submitted two letters that the United States

Attorney's Office sent to Wright's attorneys during his criminal case. The letter dated March 27,

2002 reveals that the Government proposed the following plea offer:

> If your client pleads guilty to each and every bribery and money laundering count, and
> you inform me of his willingness to do so by the COB tomorrow, we'd drop the
> remaining counts and stipulate to a three-level reduction for acceptance of responsibility
> (which would probably lower the sentencing guidelines by a year or so). If you are so
> willing, tell me, and I will write up a formal plea agreement.

(D.I. 139, at p.7.)

Although not entirely clear, Wright appears to assert that his defense attorneys advised

him to reject the plea offer and proceed to trial because they believed he stood a better chance of

being acquitted or obtaining fewer convictions if a jury heard his case.  However, after viewing

defense counsels' recommendation that Wright should proceed to trial in context with **all** of the

advice counsel provided to Wright in this case, the court concludes that counsel did not provide

ineffective assistance by making such a recommendation.  For instance, according to their joint

affidavit, counsel met with Wright after the Government extended its informal proposed plea

offer, and explained the different outcomes that could result from pleading guilty and from

proceeding to trial.  Counsel also informed Wright that they could not guarantee the success of

their proposed legal arguments or the success of any potential factual defenses if he did decide to

proceed to trial.  Given counsels' thorough presentation of Wright's options and possible results,

the court concludes that counsels' recommendation cannot be said to have undermined Wright's

ability to make a reasonably informed decision to accept or reject the proposed plea offer.[4]  *See,*

*e.g., United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992).

---

[4]Counsel filed a post-verdict motion for judgment of acquittal on the charges of bribery, conspiracy, and money laundering. (D.I. 77.) Judge McKelvie denied the motion for judgment of acquittal with respect to the conspiracy and money laundering counts.  However, Judge McKelvie did grant the motion with respect to the nine bribery counts after determining that the Government failed to prove a "federal interest" at trial sufficient to sustain the bribery conviction because the "funds affected by [Wright's] conduct in this case [were] wholly State of Delaware funds with no connection to federal funds or programs." (D.I. 90, at p.30.)  If Wright had accepted the plea offer, he would have been convicted of 13 of the 19 counts, whereas, by proceeding to trial and obtaining a judgment of acquittal on the bribery counts, Wright was convicted of 10 of the 19 counts.  This result provides additional support for the court's conclusion that counsel did not perform deficiently by advising Wright that he may obtain fewer convictions by proceeding to trial.

Additionally, even if, as Wright alleges, counsel did not advise him that he could be convicted on Counts I through VIII[5] despite the fact that he did not know the checks would be transported across state lines, claim three fails to warrant relief because Wright has not demonstrated a reasonable probability that he would have accepted the plea offer had he known such information.  For example, according to defense counsels' affidavit, Wright repeatedly insisted that none of the funds he paid Al Plant were bribes or compensation, and he repeatedly stated he did not request the funds from Al Plant with a pre-conceived intent to use the funds for his own personal purposes.  The transcript of Wright's trial testimony reveals numerous instances where Wright disagreed with any description of his actions as "stealing" or "embezzling," instead describing  his own behavior as taking "unauthorized" personal loans from the church. Moreover, during his sentencing hearing, Wright claimed that he "honestly thought that [he] was borrowing money only to replace it back," that he never intended to "enter into any kind of wrongdoing with Al Plant," that he intended the money to go to the projects of the church, and that his "misuse" of funds was the result of a gambling addiction.  (D.I. 115, at pp. 196, 200.) Simply stated, given Wright's consistent assertions that he never intended any wrongdoing, the court finds it unlikely that Wright would have accepted the plea offer even if counsel had informed him that he could be convicted of transporting stolen money despite the absence of any

---

[5]Counts five through eight alleged that Wright laundered monetary instruments in violation of 18 U.S.C. § 1956(a)(1)(B)(I) and § 2.  The predicate offense for the §1956 violation was the alleged interstate transportation of stolen property (i.e., the checks) in violation of 18 U.S.C. §2314. *Wright*, 194 F. Supp. 2d at 291.

intent or knowledge with respect to the element of interstate transportation. Accordingly, the

court will deny claim three because Wright has failed to satisfy the *Strickland* standard.[6]

## IV.    CERTIFICATE OF APPEALABILITY

Finally, the court must determine whether a certificate of appealability should issue. *See*

Third Circuit Local Appellate Rule 22.2. A certificate of appealability is appropriate only if the

petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §

2253(c)(2). The petitioner must "demonstrate that reasonable jurists would find the district

court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529

U.S. 473, 484 (2000).

---

[6]Further, the sequence of events in Wright's case strongly suggests that Wright actually
did know prior to rejecting the Government's proposed plea offer that the law did not require a
showing of intent or willfulness with respect to the interstate transportation element. For
instance, on October 25, 2001, Wright's attorneys filed a pre-trial motion to dismiss Counts I
through XVII of the indictment. Counsels' argument for dismissing Counts I through VIII,
which either charged, or were premised on, interstate transportation of stolen property in
violation of 18 U.S.C. §§ 2314 and 2, was that the Counts failed to allege that Wright acted
"willfully" as required by 18 U.S.C. § 2(b). *See United States v. Wright*, 194 F. Supp. 2d 287,
288.
  Judge McKelvie denied the motion to dismiss the indictment on March 22, 2002. He
explained that a violation of § 2 could not be raised alone, but that it had to be raised in
conjunction with a predicate offense, which, in Wright's case, was the violation of § 2314. Judge
McKelvie then determined that the reference to § 2 did not alter the state of mind requirement of
§ 2314, and he specifically held that "Wright's knowledge or lack thereof regarding the interstate
transportation of the checks [was] immaterial" to the sufficiency of the relevant counts of the
indictment. *Wright*, 194 F. Supp. 2d at 295.
  Five days later, on March 27, 2002, the Government extended the plea offer to Wright
and his attorneys. Thereafter, Wright met with his attorneys to discuss the plea offer. Although
the affidavit filed by Wright's former defense attorneys does not mention the pre-trial motion to
dismiss or whether counsel informed Wright about the reasons behind Judge McKelvie's denial
of the motion, the affidavit also does not provide any reason for the court to conclude that
counsel did not discuss Judge McKelvie's reason for denying the motion to dismiss.

7

The court is denying claim three after determining that the claim lacks merit. The court is persuaded that reasonable jurists would not find this assessment debatable. Therefore, the court will not issue a certificate of appealability with respect to claim three.

## V.   CONCLUSION

The court concludes that Wright is not entitled to relief pursuant to 28 U.S.C. § 2255 for claim three. An appropriate order will issue.